Collier, J.
The basic issue raised in this case is whether the respondent is under a clear legal duty to permit prisoners under his control to undergo hypnosis and polygraph tests for the purpose of establishing their innocence .of the crimes for which they were convicted.
It is fundamental that a writ of mandamus will not issue in the absence of a showing of a clear legal right to the relief sought by relator and, conversely, of a clear legal duty of the respondent to perform or permit the demanded relief.
Relator bases his right in part on the constitutional right to effective assistance of counsel. He cites in support of this claim the case of Thomas, Warden, v. Mills, 117 Ohio St., 114, which holds that a prisoner confined in the penitentiary after conviction has a constitutional right to confer with his attorney on matters relating to an appeal, and the case of People v. Larrios, 220 Cal., 236, which holds at least inferentially that an accused who does not speak English has a right to converse with his attorney through his own interpreter. Neither of those cases is applicable to the present situation. There is no ques *122 tion that ail accused has a right to confer with his counsel and through the medium of his own interpreter if necessary, but •such right to counsel stops at that point; no right exists in an accused as an adjunct to the right of counsel to have such counsel assisted by experts in exploring the innermost recesses of the accused’s mind to prepare his case.
The right to counsel, so far as the constitutional mandate is concerned, extends only to the right to representation by an attorney, it does not include the multitude of experts often employed in the preparation of criminal cases both by the state and by the accused.
Relator urges further that his conviction does not deprive him of his civil rights, that the average person can consult with whom he pleases and undergo any test that he wishes, and that, therefore, he has the same rights as any ordinary citizen. This is of course not true. Once one has been convicted of a crime and incarcerated in a penal institution, ■ even assuming he has not lost all the rights of an ordinary citizen, such rights necessarily are subject to the rules and regulations of the penal institution. So far as relator is concerned, the rights which he may enforce are only those which are conferred on him as a matter of law. The right to the tests which he seeks is not so conferred.
The respondent in the instant case has control over the penal institutions in this state. It is his duty to manage and regulate these institutions so that they will fulfill the purpose for which they were created. As a part of the regulation thereof, it is within his discretion as to who shall have access to the prisoners, and, with the exception of counsel, any person is permitted access to the prisoners only through his discretion. In the present case, his refusal to allow access to relator by the various experts necessary to perform the tests desired was clearly a matter within his own discretion, and a court will not interfere with the exercise thereof. The court can no more compel the respondent to permit these tests than it could prevent them if respondent and relator had agreed thereto.
There is no clear legal duty on the part of the Chief of the Division of Correction of the Department of Mental Hygiene and Correction to permit a prisoner to subject himself to hypno *123 sis or a polygraph test in order to demonstrate his innocence of the crime for which he was convicted; and, the allowing of such tests being strictly within the discretion of snch officer, a writ of mandamus does not lie to compel such tests.
The relator urges also that even though there is discretion in respondent his refusal to permit such tests amounts to a gross abuse of discretion. Upon what the relator bases his allegation in this respect is somewhat vague. If it is the fact that he continually protests his innocence, this certainly is no basis for determining that the refusal constituted an abuse. The very great majority of persons confined in penal institutions continually protest their innocence. Apparently the only basis for such claim is that relator has been refused the right to have these tests.
To show an abuse of discretion it is necessary to show more than an error of judgment; rather it is necessary to show an act that is fostered by perversity of will, passion or prejudice. Alliance v. Joyce, 49 Ohio St., 7, 22, and State, ex rel. Wilms, v. Blake et al., Industrial Commission, 144 Ohio St., 619, 624.
The demurrer in the instant case is in the nature of a technical demurrer having the effect of a general denial and does not have the effect of admitting the innocence of the relator; it merely raises the issue of the duty of respondent in this matter.
Inasmuch as no clear legal duty is shown in the instant case, the demurrer is sustained and the writ denied.

Demurrers sustained and writs denied.

Zimmerman, acting C. J., Kerns, Taet, Matthias, Badcliee and Griffith, JJ., concur.
Zimmerman, J., sitting in the place and stead of Weygandt, C. J.
Kerns, J., of the Second Appellate District, sitting by designation in the place and stead of Zimmerman, J.
Collier, J., of the Fourth Appellate District, sitting by designation in the place and stead of Herbert, J.
Badclife, J., of the Fourth Appellate District, sitting by designation in the place and stead of O’Neill, J.